# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAM DUPERRY,<br>　　　　Petitioner, | |
| | CIVIL ACTION NO. |
| 　　v. | 3:06cv951 (SRU) |
| THOMAS A. KIRK, JR.,<br>　　　　Respondent. | |

## RULING ON PETITION FOR HABEAS CORPUS

Petitioner Adam DuPerry brings this petition for a writ for habeas corpus pursuant to 28 U.S.C. § 2254, challenging his continued confinement under the jurisdiction of the Psychiatric Security Review Board (the "PSRB"), which is the division of the Connecticut Department of Mental Health and Addiction Services charged with the custody of persons found not guilty by reason of mental disease or defect. In December 1988, the Connecticut Superior Court found DuPerry not guilty by reason of insanity of felony arson and bomb manufacturing charges. DuPerry seeks a writ vacating his plea of not guilty by reason of insanity on several grounds, notably that his waiver of fundamental constitutional rights when entering his plea was not knowing and voluntary. For the reasons set forth below, DuPerry's petition is granted.

## I.　　Background

### A.　　Charged Offense

On April 21, 1988, DuPerry was arrested and charged with arson in the first degree, in violation of Conn. Gen. Stat. § 53a-111, and manufacture of a bomb, in violation of Conn. Gen. Stat. § 53-80a, in connection with a pipe bomb explosion at the Institute of Living in Hartford, Connecticut on March 24, 1988. A1, A16, A194-95. DuPerry entered an initial plea of "not guilty" and requested a jury trial. After DuPerry's arraignment, on April 25, 1988, Dennis

O'Toole, an assistant public defender, was appointed to represent DuPerry. A68, A170.

      B.        <u>Change of Plea Negotiations and Trial</u>

Following his appointment, O'Toole met with Kevin McMahon, the assistant state's attorney assigned to the case, to discuss a possible plea bargain. A70-71. McMahon initially offered DuPerry a plea deal for a thirty-five year prison sentence, suspended after twelve years, in exchange for his guilty plea. Believing that a mental health defense might be a viable possibility in the case, O'Toole had Dr. Walter Borden, a psychiatrist, examine DuPerry. A174-75. Dr. Borden concluded that DuPerry did not understand the wrongfulness of his conduct at the time he committed the crime and that an insanity defense would be appropriate. A175. After O'Toole presented McMahon with Dr. Borden's report, McMahon requested that DuPerry undergo a similar examination by a psychiatrist chosen by the state. *Id.* That psychiatrist, Dr. Donald Grayson, reached a similar conclusion about DuPerry.

O'Toole then discussed with DuPerry the possibility of entering a special defense of not guilty by reason of insanity ("NGRI"). O'Toole explained that pleading NGRI, as an alternative to the state's plea deal, would likely mean he would spend less time in a hospital than the proposed plea deal would require that he spend in prison. A176-77. DuPerry testified during his state court habeas proceedings that he decided to follow his attorney's advice to plead NGRI because he believed he would spend significantly less than twelve years in a mental institution. A155, A159. He testified that his attorney did not tell him that, by pleading NGRI, he would risk spending more than twelve years – up to the maximum twenty-five years, or even an indefinite period of time – in a mental institution. A159-60. During the same state court habeas hearing, O'Toole testified that it was "possibl[e], but not likely" that he told DuPerry that he could spend

more than twelve years in a mental institution. A177-78. He also stated that it was likely that he informed him of the maximum sentence, twenty-five years, but that he definitely did not inform DuPerry that he could spend an indefinite period, up to life, in a mental institution as a result of pleading NGRI. A178.

O'Toole informed McMahon that DuPerry would pursue a NGRI defense on the basis of the two psychiatrists' reports rather than accept the plea deal. A179-80. O'Toole and McMahon then agreed to conduct a pre-arranged, non-adversarial proceeding in the form of a bench trial. A180. O'Toole believed that a judge, rather than a jury, would be more likely to make a finding of not guilty by reason of insanity. A177. According to their arrangement, once DuPerry waived his right to a jury trial, McMahon would present the state's evidence of the prima facie case against DuPerry and O'Toole would put forward his psychiatric evidence supporting a NGRI defense. A180-81. Neither side would contest the other's evidence. *Id.*

Pursuant to that agreement, on December 20, 1988, DuPerry waived his right to a jury trial and entered his NGRI plea before Judge Thomas Corrigan in Connecticut Superior Court ("the trial court"). A1. During the two-hour bench trial, the court heard testimony from the two psychiatrists who examined DuPerry and from the state's witnesses who testified about the facts relating to the underlying charges. A2-3. In accordance with their pre-arranged agreement, neither O'Toole or McMahon meaningfully challenged the other side's evidence. A181. After considering the evidence of DuPerry's mental state, Judge Corrigan found DuPerry not guilty by reason of mental disease or defect. A3.

On February 28, 1989, the trial court committed DuPerry to the jurisdiction of the PSRB

for a period of up to twenty-five years, pursuant to Conn. Gen. Stat. § 17-257(c).[1]  A1.  DuPerry

was confined to the Whiting Forensic Institute (n/k/a the Whiting Forensic Division of

Connecticut Valley Hospital), a state mental hospital for acquittees in PSRB custody, where he

remains to this day.  *Id.*

      C.      First Habeas Petition

DuPerry filed his first state court habeas petition in 1995 ("the first habeas petition"),

which was later amended in 1997.  A9-11.  The petition contested the legality of DuPerry's

confinement on two grounds – first, that he was no longer mentally ill, and second, that he had

been denied effective assistance of counsel at his bench trial in December 1988 because his

attorney had failed to inform him of the consequences of choosing to plead NGRI.  *Id.*  In

January 1998, after a one-day evidentiary hearing, the first habeas court dismissed the petition on

the ground that DuPerry had not proven either count by a preponderance of the evidence.  A121-

27.

The court later granted DuPerry's motion to reopen the first habeas petition in order to

present additional grounds.  DuPerry filed an Amended Petition on March 24, 1999, which added

three new grounds: that DuPerry's decision to plead NGRI was not made knowingly and

intelligently (Count Three), that the trial court failed to conduct a canvass of his NGRI plea

(Count Four), and that DuPerry was not competent at the February 1989 commitment hearing

(Count Five).  A128-34.  DuPerry amended his petition again in February 2000, withdrawing his

---

[1] That section is now codified as Conn. Gen. Stat. § 17a-582.  It permits the court to set a maximum term of confinement, but permits the PSRB, upon the expiration of that maximum term, to seek the continued commitment of the acquittee if it deems him to be a danger to himself or others.  *See* Conn. Gen. Stat. §§  17a-582(h) and 17a-593(c).

-4-

lack of competence claim in Count Five, and adding a claim that he was not properly canvassed about his waiver of the right to a jury trial at the December 1988 bench trial (Count Six).  A218-22.3.

1.    *Habeas Court Evidentiary Proceedings and Judgment*

In August 2000, Judge Daniel Spallone, sitting as the first habeas court, granted DuPerry's petition, finding that DuPerry had proven by a preponderance of the evidence that he was not expressly canvassed, as mandated by Practice Book Section 39-19.[2]  A255-56.  Judge Spallone further found that DuPerry did not understand the consequences of pleading NGRI. A256.  The court based its factual findings on an evidentiary hearing conducted in two parts

---

[2]  Section 39-19, Plea of Guilty or Nolo Contendere--Acceptance of Plea; Advice to Defendant, states in full:

> The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:
>
> (1) The nature of the charge to which the plea is offered;
>
> (2) The mandatory minimum sentence, if any;
>
> (3) The fact that the statute for the particular offense does not permit the sentence to be suspended;
>
> (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and
>
> (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself.

before Judge Spallone and Judge Thomas Parker.[3]  A255.

DuPerry testified at the evidentiary hearing, answering questions about his decision to plead NGRI and his recollection of the bench trial proceedings before Judge Corrigan.  DuPerry recalled that his attorney told him that he had three options: go to trial, take the plea bargain, or plead NGRI.  A156.  DuPerry explained that he opted for the "mental health route" because he believed he would be out of custody in less than twelve years.  A159.  He said he was never advised of the several consequences of pleading NGRI, including that he might be confined for the maximum twenty-five years, or even indefinitely, or that a court could deny PSRB's recommendation for his release.  A159-60.  On the issue of waiver, DuPerry could not specifically remember waiving his right to a jury trial, nor did he recall the judge speaking with him about the consequences of pleading NGRI.  A161.  DuPerry testified that the judge did not inform him that, as a consequence of his NGRI plea, he would be committed to the custody of the PSRB for up to twenty-five years, that the PSRB could keep in him custody indefinitely, or that, even if the PSRB recommended his release, a court would have to approve it.  Id.  DuPerry testified that the judge had not questioned him about the voluntariness of his NGRI plea.  A161-62.  When presented with the court log by the assistant state's attorney on cross-examination, DuPerry testified that he could not recall what occurred during the log entries indicating that the

---

[3] At an evidentiary hearing held on February 22, 2000 before Judge Parker, DuPerry, O'Toole, and several other witnesses testified about the nature of the 1988 bench trial proceedings.  After the hearing was adjourned for one week, Judge Parker recused himself. A237.  The evidentiary hearing was continued until May 3, 2000 when the prosecutor in DuPerry's case, McMahon, testified before Judge Spallone.  A223-51.  In his memorandum of decision, Judge Spallone indicated that the parties agreed that he should make his factual findings on the basis of the transcript of the proceedings held before Judge Parker and the additional evidence and testimony presented to him.  A255, A237.

court had addressed the defendant.[4]  A163-65.

At the evidentiary hearing, O'Toole testified that he never advised DuPerry about how the

PSRB operated.  A179.  O'Toole explained that, because the PSRB was a relatively new

institution at that point in time, he did not have a full understanding about how it worked.  *Id.*

Not only was O'Toole, by his own admission, not aware that DuPerry could potentially remain in

---

[4] Because the transcript of the December 20, 1988 plea had been misplaced at the time of
the evidentiary hearing, the only record of the bench trial proceeding was the court log.  A182-
83.  A portion of the transcript of the December 1988 proceeding, during which the court put
DuPerry to his plea and rendered its verdict, was subsequently recovered and attached to the
state's appeal filed in February 2001.  A310-15.  The courtroom log for December 20, 1988 in
the matter of *State v. Adam DuPerry*, Corrigan, J. presiding, reads in full:
> 10:30: Court opens
> 10:31: ASA addresses Court
> 10:31: Judge addresses Δ
> 10:32: ASA addresses Court
> 10:32: Judge speaks to Δ
> 10:36: Recess
> 10:46: Court reconvenes
> 10:46: Judge addresses Δ
> 10:50: Judge questions Δ atty
> 10:52: Δ put to plea
> 10:53: Judge questions Δ
> 10:56: Direct exam of Dr. Grayson by ASA
> 11:08: Cross exam—None
> 11:10: Direct exam of Dr. Borden by defense atty
> 11:19: Cross exam by ASA
> 11:21: Direct exam Mr. Ingerson by ASA
> 11:27: Cross exam by Δ atty
> 11:28: Recess
> 11:46: Court reconvenes
> 11:47: Direct exam of Det. Thomas Goodrow
> 12:10: Cross exam by Δ atty
> 12:12: State rests
> 12:13: ASA argues case to Court
> 12:16: Δ  atty argues case to Court
> 12:17: Judge renders decision — NG by reason of mental disease or defect

A2-3.

PSRB custody indefinitely, he did not know that, if the PSRB recommended DuPerry for release, a court would still have to approve it and that the state could actively oppose the PSRB's recommendation for release. *Id.*

Recalling the point at trial when DuPerry was put to plea and elected a court trial, O'Toole stated that he had no memory of the judge ever advising DuPerry about his right to a jury trial. A182. O'Toole testified that the judge never canvassed DuPerry on the consequences of pleading NGRI. A184. Specifically, he was certain that the judge never advised DuPerry that he might be kept in custody for up to twenty-five years or even indefinitely. *Id.*

As its final witness, the state called former prosecutor McMahon to testify about his recollection of the December 1988 bench trial before Judge Corrigan. According to McMahon, Judge Corrigan was one of the most thorough canvassers he worked with in his fourteen years as a prosecutor, but offered very few specifics about the DuPerry canvass. A240-41. In particular, he could only recall that Judge Corrigan did canvass DuPerry about his waiver of his right to a trial by jury. A241.

On August 1, 2000, the first habeas court granted DuPerry's petition, finding that DuPerry had proven his allegations by a fair preponderance of the evidence. A253, A255. The court found the record devoid of any indication that the trial court in the underlying criminal proceeding conducted a proper canvass, declining to adopt the state's argument that, because Judge Corrigan always canvassed defendants properly, he must have done so in DuPerry's case. A256. The court held that the canvassing of defendants must be "patent, unequivocal and readily ascertainable from the record." *Id.* The court further held that a factual finding that the court properly canvassed a defendant cannot be made "on conjecture, speculation or inference"

and that the requirements that applied to taking a guilty plea also applied to acceptance of a

NGRI plea. *Id.* (citing *State v. Connelly*, 46 Conn. App. 486 (1997)). The court concluded:

> Under the circumstances presented by the record in this case, the court finds
> that the petitioner did not knowingly and voluntarily waive his constitutional
> right to a jury trial; nor did he understand the consequences of his plea of not
> guilty by reason of mental disease or defect. The lack of a satisfactory waiver
> of the petitioner's constitutional rights renders his plea involuntary. *State v.
> Shockley*, 188 Conn. 697, 706, 453 A.2d 441 (1982). A court will not
> presume a waiver of fundamental rights from a silent record. *Id.* [at] 707.

*Id.* The court vacated DuPerry's acquittal by reason of insanity, directing the petitioner to be

released from custody if the state declined to proceed with a new trial within forty days. A257.

The state moved for reargument and reconsideration on two grounds: (1) that DuPerry's

habeas claims were procedurally defaulted, and (2) that the habeas court had improperly

established a new constitutional rule of criminal procedure in violation of the principles set forth

in *Teague v. Lane*, 498 U.S. 288 (1989). SA1-2. The court denied the motion to reargue and

reconsider on August 16, 2000. SA3. DuPerry subsequently moved for clarification of the

court's order and, on November 14, 2000, the court ruled that DuPerry's claims were "not barred

by procedural default." A258.

2.    *Connecticut Supreme Court Decision*

The state filed a timely appeal to the Connecticut Appellate Court and the Connecticut

Supreme Court transferred the case to its own docket. *DuPerry v. Solnit ("DuPerry I")*, 261

Conn. 309, 316-17 (2002). In its decision dated August 13, 2002, the Court reversed the

judgment of the habeas court and remanded the case with the direction to enter judgment denying

DuPerry's petition for habeas corpus. *Id.* at 336.

The state advanced two arguments on appeal. First, it argued that, unlike a defendant

who pleads guilty, a defendant who pleads NGRI does not forfeit any constitutional rights and therefore, does not enjoy the due process right recognized in *Boykin v. Alabama*, 395 U.S. 238 (1969), to be canvassed regarding that plea. *DuPerry I*, 261 Conn. at 317. In the alternative, the state argued that, even if the habeas court properly concluded a canvass was required, it nevertheless violated the principle announced in *Teague* by establishing and applying a new constitutional rule of criminal procedure in a collateral proceeding. *Id.* at 318. DuPerry contended that the first habeas court did not apply a new constitutional rule because it was well-established that a trial court was required to canvass a defendant who pleads NGRI in the same manner that it would canvass a defendant who pleads guilty. *Id.* at 319. Alternatively, DuPerry argued that even if it was a new constitutional rule, the "watershed" exception to *Teague*'s prohibition on the application of new constitutional rules in collateral proceedings applied. *Id.* at 325-26. The Connecticut Supreme Court concluded that the *Teague* issue was dispositive, concluding "the habeas court established a new constitutional rule of criminal procedure." *Id.* at 324.

The Court first summarized the United States Supreme Court's decision in *Teague*, which held that courts should not establish or apply new constitutional rules in collateral proceedings, such as habeas corpus review. *Id.* (citing *Teague*, 489 U.S. at 315-16). Relying on the United States Supreme Court's holding in *Saffle v. Parks*, 494 U.S. 484, 488, 491 (1990), the *DuPerry I* Court concluded that, "a rule is new unless the precedent existing at the time of the petitioner's trial compelled the result the petitioner now seeks." 261 Conn. at 319.

In the first step of its analysis, the Court concluded that the first habeas court established and applied a new rule of constitutional criminal procedure because, based on then-existing

precedent, the trial court would not have felt that it was constitutionally compelled to canvass DuPerry before taking his NGRI plea. *Id.* at 324. The Court reviewed the cases cited by DuPerry as having established the applicability of the *Boykin* principle to NGRI pleas – *Miller v. Angliker*, 848 F.2d 1312, 1313-15 (2d Cir. 1988), and *United States v. Brown*, 428 F.2d 1100, 1102 (D.C. Cir. 1970) – and concluded that those cases were distinguishable from DuPerry's situation because "neither established the principle that the trial court *must*, as a constitutional requirement, canvass a defendant who enters [a NGRI plea] to ensure that the plea is made knowingly and voluntarily." *DuPerry I*, 261 Conn. at 323.

The Court noted that the Second Circuit in *Miller* stated that "[a] plea of not guilty by reason of insanity resembles the plea of guilty in several important respects, as it waives important trial rights belonging to the defendant" and that as a practical matter there are many similarities between the two pleas. *Id.* at 322 (quoting *Miller*, 848 F.2d at 1319). Nevertheless, the Court concluded that *Miller* was not persuasive for DuPerry because it dealt specifically with the issue whether a plea of NGRI is invalidated by the failure to turn over exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), not canvassing a defendant pleading guilty as required by *Boykin*. *DuPerry I*, 261 Conn. at 323. Similarly, the Court interpreted the D.C. Circuit's decision in *Brown* as holding that a defendant who stipulates to the facts charged in the indictment, but who pleads NGRI rather than guilty, must still be canvassed under the procedures set forth in Federal Rule of Criminal Procedure 11 to ensure the stipulation was made knowingly, intelligently, and voluntarily with a full understanding of the consequences of such a plea. *Id.* at 322-23 (citing *Brown*, 428 F.2d at 1101-04). The Court held that *Brown* did not compel the result DuPerry sought because, according to its interpretation of the case, it involved

extending Rule 11's guilty plea canvass requirement to those defendants who stipulate to all issues at trial except sanity and did not "expressly rest its holding on a constitutional footing." *Id.* at 323-24. Because *Brown* involved the court's supervisory power to extend the reach of a federal procedural rule and not the application of a constitutional principle, the Court reasoned *Brown* was not persuasive to DuPerry's claim that constitutional precedent existing at the time of his plea required a canvass of defendants pleading NGRI. *Id.* at 324. Thus, the Court held that, because "neither case actually held that the principle of *Boykin* – that a guilty plea must be knowing and voluntary – applies to a plea of guilty by reason of mental disease or defect,"[5] DuPerry could not reasonably argue that the trial court would have felt constitutionally compelled to canvass DuPerry and therefore, the habeas court must have established a new constitutional rule of criminal procedure. *Id.*

Having determined the habeas court departed from established constitutional precedent, the Court focused on the question whether the new constitutional rule fell into either of the two exceptions to the *Teague* proscription against applying new constitutional rules in collateral proceedings. *Id.* DuPerry conceded that the rule would not fall into the first exception: that it did not "place[] a category of private conduct beyond the power of the state to proscribe or

---

[5] Certainly *Boykin* held that a guilty plea must be knowing and voluntary, but in doing so *Boykin* was merely affirming longstanding precedent. *E.g., McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void."), *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (holding that waiver of fundamental constitutional rights ordinarily requires "an intentional relinquishment or abandonment of a known right or privilege"). In my view, therefore, *Boykin* reaffirmed an existing principle, not unique to *Boykin*, and established the new rule of constitutional criminal procedure that judges must canvass a defendant on his guilty plea because courts "cannot presume a waiver of . . . important federal rights from a silent record." 395 U.S. at 243.

prohibit[] a certain category of punishment for an entire class of defendants because of their status or offense." *Id.* (citing *Saffle*, 494 U.S. at 494). Therefore, the Court focused its inquiry on whether the habeas court established a "watershed" rule of criminal procedure, which it defined as one that (1) implicated the fundamental fairness of the underlying proceeding, and (2) "constitute[d] a procedure 'without which the likelihood of an accurate conviction is seriously diminished.'" *Id.* at 325 (quoting *Teague*, 489 U.S. at 313).

First, the Court concluded that DuPerry had not successfully demonstrated how the rule touched upon the accuracy of the underlying proceeding. *Id.* at 326. Although a canvass requirement for a NGRI plea might implicate concerns of fundamental fairness, the Court did not see how it would implicate the underlying proceeding's *accuracy*. *Id.* Comparing the canvass requirement to the right to counsel recognized in *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963), and the right to a jury instruction that accurately describes the reasonable doubt standard identified by the Second Circuit in *Gaines v. Kelly*, 202 F.3d 598, 604 (2d Cir. 2000), which both protect the defendant from an inaccurate determination of guilt, the Court held that a NGRI canvass does not similarly implicate the accuracy of the underlying proceeding. *DuPerry I*, 261 Conn. at 326. Therefore, it held that the new constitutional rule did not fall into the "watershed" exception to *Teague*. *Id.* Significantly, it added that, because it determined that the new constitutional rule was not a "watershed" rule of criminal procedure under the *Teague* doctrine, it did not need to address whether the substance of the habeas court's conclusion was correct, i.e., whether the principle reaffirmed in *Boykin*, that due process requires a guilty plea be made knowingly and voluntarily, applied to defendants pleading NGRI. *Id.* at 326 n.7. Therefore, it never reached the merits of that particular issue.

-13-

Notwithstanding its conclusion that it could not apply the new constitutional rule in DuPerry's case, the Court then held that, in all future cases where a defendant pleads NGRI in a non-adversarial proceeding, the trial court would be required to conduct a canvass to determine whether the defendant was making the plea voluntarily and with full knowledge of its consequences. *Id.* at 329. The court reasoned that, although a guilty plea and a NGRI plea are "not synonymous, the practical similarities between the two are significant." *Id.* at 327. The Court found little merit in the state's argument that a defendant who pleads NGRI waives no constitutional rights, noting that although such a defendant is not *required* to forgo constitutional trial rights such as the right to contest the charges, the right to cross-examine state witnesses, or the right to introduce evidence that would tend to create a reasonable doubt that he or she is guilty of the crimes charged, "as a practical matter" defendants often do forgo those rights through informal agreements with the state. *Id.* at 328.

Noting its persuasive reasoning, the Court quoted significantly from the Second Circuit's decision in *Miller* on the issue of the practical similarities between a guilty plea and a NGRI plea, i.e., that "the insanity plea lessens [the state's] burden considerably as a practical matter by barring the defendant from contesting or impeaching the State's proof and from presenting other evidence that would counter that proof." *Id.* (quoting *Miller*, 848 F.2d at 1319). The Court additionally noted the lack of practical significance between the factual situation in *Brown*, where the defendant formally stipulated that he committed the act charged leaving only the issue of sanity to be contested, and the practice in Connecticut of pleading NGRI as an affirmative defense. *Id.* Because the defendant pleading NGRI often does not contest the state's case, it acts a stipulation for all practical purposes. *Id.* at 329. Therefore, the Court held that, in non-

adversarial proceedings where the defendant is pleading NGRI, the trial court's canvass must

establish that the defendant understands that:

> (1) he is waiving his right to a jury trial; (2) he is waiving his right not to incriminate himself; (3) he is waiving his right to confront the witnesses against him; (4) he is exposing himself to the possibility of commitment to the jurisdiction of the [PSRB] and of confinement in a hospital for psychiatric disabilities; (5) he must remain committed during any term of commitment imposed by the trial court unless the court finds that the defendant is a person who should no longer be committed and orders his discharge; (6) the maximum term of commitment ordered by the court can be equal to the maximum sentence that could have been imposed if the defendant were convicted of the offense, with a statement of that actual sentence; and (7) any term of commitment imposed by the trial court may be extended, potentially for an indefinite duration, as a result of a civil commitment proceeding pursuant to General Statutes § 17a-593.

*Id.*

The Court then analyzed DuPerry's final two claims: that he had not knowingly and

voluntarily waived his right to a trial by jury and that he was denied the effective assistance of

counsel. *Id.* at 330, 333. On the jury trial waiver claim, the Court agreed with the state's

argument, namely that the habeas court erred in reaching the merits of the claim because DuPerry

was procedurally barred from raising the claim, having failed to raise the claim prior to the

habeas proceeding. *Id.* at 332-33. The Court rejected DuPerry's argument that he was entitled to

raise the claim for the first time during the habeas proceeding because he had cause – that he did

not know at the time he had a right to object to the failure to canvass him regarding his plea – and

prejudice – that he could be confined indefinitely as a result of pleading NGRI. *Id.* at 332. The

Court first concluded that the merits of his failure to canvass claim were not applicable to his jury

trial waiver claim and whether he had procedurally defaulted on that claim. *Id.* Next, the Court

concluded that there was no evidence in the record to support the habeas court's conclusion that

the jury waiver claim was not procedurally barred by his failure to raise the issue prior to his

habeas proceeding. *Id.* According to the Court, the only pertinent evidence on the record was

O'Toole's testimony that he never objected to the court's failure to canvass DuPerry on his

decision to elect a court trial rather than a trial by a jury. *Id.* at 332-33. Thus, the Court

concluded that the habeas court erred in finding that DuPerry's claim was not procedurally barred

and that it should not have ever reached the merits of the jury trial waiver claim. *Id.* at 333.

Finally, the Court affirmed the habeas court's conclusion that DuPerry's ineffective

assistance of counsel claim was not persuasive. Based on the factual findings of the habeas court

that considered DuPerry's original petition, the Court determined that O'Toole provided DuPerry

with all the information he had available regarding DuPerry's plea options and that DuPerry's

belief that he would spend less than twelve years in confinement by pursuing a mental health

defense was based on DuPerry's "own conjecture and not on the advice of his attorney." *Id.* at

336. Relying on the principle set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88

(1984), and assuming that the habeas court's factual findings were not clearly erroneous, the

Court held that "it cannot be argued reasonably that O'Toole's representation of the petitioner

here fell below an objective standard of reasonableness." *DuPerry*, 261 Conn. at 336. The Court

reversed the judgment of the habeas court and remanded the case with the direction to enter

judgment denying DuPerry's petition. *Id.*

     D.     <u>Second Habeas Petition</u>

DuPerry filed a second habeas petition in Connecticut Superior Court on October 30,

2002. SA13. The new petition alleged that DuPerry's constitutional due process rights had been

violated because he did not voluntarily, knowingly, and intelligently waive his right to appeal the

trial court's NGRI verdict and that he was denied the effective assistance of counsel because his attorney had failed to consult with him about raising an appeal. SA17. As relief, the second petition sought to restore Duperry's appellate rights under Conn. Gen. Stat. § 54-95.

The second habeas court found that it was uncontroverted that neither the trial court nor DuPerry's attorney ever advised DuPerry about his right to appeal the NGRI verdict. A461. The second habeas court also found that DuPerry had a clear "fundamental" statutory right to appeal the NGRI verdict in 1988. *Id.* Finding that DuPerry did not make a knowing, voluntary, or intelligent waiver of his fundamental right to appeal the NGRI verdict, the court next considered whether DuPerry was procedurally barred from bringing the claim on a habeas petition because he failed to bring a direct appeal and whether he sufficiently pled "cause" and "prejudice" to properly excuse that failure.

First, the second habeas court found that DuPerry had procedurally defaulted by failing to bring a direct appeal, thus triggering an examination of whether he had satisfied the "cause and prejudice" test necessary to override that default. A462. Because DuPerry's attorney never discussed the possibility of bringing an appeal, the court determined that he had sufficiently demonstrated "cause" for failure to bring a direct appeal. *Id.* The court cited *Ghant v. Commissioner of Correction*, 255 Conn. 1 (2000), holding that, to satisfy the prejudice prong, a defendant must show there is a reasonable probability that, but for counsel's failure to discuss raising an appeal, he would have appealed. A462-63. Evidence of nonfrivolous grounds or the defendant's express intent to pursue an appeal are important factors for this prong. A463. The court found that DuPerry had not satisfied the "prejudice" prong, concluding that his three grounds for appeal were either "frivolous, or that there was no reasonable probability that they

would have been timely raised, even if counsel had advised petitioner of his right to appeal." *Id.*

Thus, the court concluded that DuPerry had not satisfied the prejudice prong and that he was not

entitled, as a matter of law, to the restoration of his appellate rights. A464.

The court then turned to DuPerry's ineffective assistance of counsel claim for failure to

advise DuPerry of his right to make a direct appeal of the NGRI verdict. The court cited the rule

established in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and adopted by *Ghant*, that an attorney

has a constitutional obligation to consult with his client about an appeal when he or she has

reason to believe either (1) that a rational defendant in those circumstances would want to appeal,

or (2) that this particular defendant reasonably indicated an interest in raising an appeal. A465.

Considering the totality of the circumstances at the time of the 1988 NGRI plea and verdict, the

court found that O'Toole did not have a "reason to think that the petitioner would have rationally

wanted to pursue any of the grounds listed for appeal, even if he had received timely notice of his

appellate rights." *Id.* Therefore, the court found DuPerry was not entitled to habeas corpus relief

on his second claim and denied his petition. A465-66.

DuPerry appealed to the Connecticut Appellate Court, which affirmed the second habeas

court's ruling. *DuPerry v. Kirk ("DuPerry II")*, 90 Conn. App. 493, 517 (2005). With regard to

DuPerry's due process claim, the appellate court concluded that, because the right to appeal is

not a constitutional right but rather one conferred by statute, it is not eligible for consideration on

a petition for a writ of habeas corpus. *Id.* at 509-10. "[A]lthough it is axiomatic that the state

may not convict a defendant unless it provides to that defendant certain constitutional safeguards,

the right to appeal is *not* one of those safeguards," thus, the court concluded that DuPerry's first

claim failed as a matter of law. *Id.* at 510 (quoting *State v. Perkins*, 271 Conn. 218, 234 (2004)).

The court also affirmed the habeas court's denial of his ineffective assistance claim, agreeing that his attorney's performance was reasonable under the circumstances. *Id.* at 510-11. The court clarified the legal hurdles that DuPerry faced in raising an ineffective assistance claim on the basis of a failure to advise about the right to appeal. *Id.* at 511-16. Using the *Ghant* decision as its guide, the court explained that the first prong of the *Strickland* test, i.e., that counsel's representation fell below an objective standard of reasonableness, is not automatically satisfied if counsel did not consult with the defendant about taking an appeal. *Id.* at 512-13. Rather, a constitutional duty to consult with the defendant about his or her appellate rights attaches only where there is reason to believe (1) a rational defendant would want to appeal, e.g., because there are nonfrivolous grounds for an appeal, or (2) that this particular defendant had expressed his interest in appealing. *Id.* at 513 (citing *Ghant*, 255 Conn. at 9-10). The court concluded that O'Toole would not reasonably have known DuPerry would have wanted to appeal because an appeal might have reversed his stated desire to be committed to the PSRB rather than go to prison. *Id.* at 516. Because the court could not "conclude that there was a rational basis on which the petitioner would have wanted to appeal," DuPerry failed to establish the first prong of the *Strickland* test. *Id.*

On the issue of the second prong of the *Strickland* test, i.e., prejudice, the court explained that DuPerry had to prove that he would have made a timely appeal, but for his counsel's failure to advise him of his appellate rights. *Id.* at 513-14. As a fact-based inquiry, key issues include whether there were nonfrivolous grounds for appeal and whether the defendant actually expressed an interest in making an appeal. *Id.* at 514. Even though the second habeas court

determined DuPerry had one non-frivolous ground for appeal, DuPerry failed to convince the appellate court that he would have taken a timely appeal. *Id.* at 515 ("[T]he petitioner has failed to provide a record demonstrating that, had he been informed of the right to file an appeal, he timely would have done so."). The court concluded further that, even if DuPerry *had* prevailed on appeal, he could not demonstrate how he would have been in a better position than he was currently in, and thus was not prejudiced by counsel's failure to advise him of the right to appeal. *Id.* at 516. The court doubted that the state would likely offer him a more favorable plea bargain; and had he asserted the same NGRI defense at trial and a jury acquitted him on that basis, he would still have been remanded to the custody of the PSRB, the same position he was currently in. *Id.* Or, if it didn't accept his NGRI defense, the jury could have found him guilty and he would have been sentenced to a lengthy prison term. *Id.* Therefore, the court concluded that DuPerry had failed to demonstrate how the failure to appeal prejudiced him, rejecting DuPerry's second claim. *Id.* The court affirmed the habeas court's denial of his petition for habeas corpus. *Id.* at 517. The Connecticut Supreme Court denied *certiorari* on March 7, 2006. A644, *DuPerry v. Kirk*, 277 Conn. 921 (2006).

  E.  <u>Federal Habeas Petition</u>

  DuPerry filed the instant federal petition for habeas corpus on June 20, 2006. He raises four claims: (1) that he did not knowingly and voluntarily plead NGRI; (2) that the trial court failed to canvass him to ensure that his NGRI plea was made knowingly and voluntarily; (3) that the trial court failed to canvass him to determine whether his waiver of his right to trial by jury was knowing and voluntary; and (4) that his trial counsel provided ineffective assistance by (a) failing to fully advise him on the consequences of pleading NGRI and (b) failing to advise him of

his right to take a direct appeal.

## II.    Standards of Review

### A.    Factual Findings of State Habeas Court

A federal district court must defer to the factual findings made by a state habeas court and give such findings a presumption of correctness. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").

### B.    Legal Conclusions of State Habeas Court

A federal habeas court must give deference to a state court's adjudication of federal constitutional claims if the state court reached the merits of those claims. 28 U.S.C. § 2254(d). A federal district court may reach claims adjudicated on the merits in state court proceedings only where the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Torres v. Berbary*, 340 F.3d 63, 67-68 (2d Cir. 2003). This deferential standard of review does *not* apply where the state court did not reach the merits of a particular claim. *Torres*, 340 F.3d at 68. Instead, the federal district court may consider the petitioner's federal constitutional claims *de novo. Id.*

The State conceded at oral argument that the state habeas courts did not reach the merits of DuPerry's constitutional claims set forth in Counts One and Three.[6] Tr. Apr. 25, 2007 at 5-6. Thus, I must review the legal arguments set forth in those counts *de novo.* DuPerry concedes that

---

[6] The state also conceded that the state courts did not reach the merits of the constitutional claim set forth in Count Two, Tr. Apr. 25, 2007 at 5-6, but that concession appears to have been inadvertent.

the state habeas courts did reach the merits of the constitutional claims set forth in Count Four, and that the more deferential standard of review would apply to that count.

## III.    Discussion

The outcome of this habeas petition depends on a parsing of the claims raised in the petition and a close reading of the Connecticut Supreme Court's decision in *DuPerry I.*  Whether DuPerry has raised a constitutional challenge to his NGRI plea that was not decided by the Connecticut Supreme Court affects the both the substantive rights being adjudicated and the applicable standard of review.

DuPerry argues that he has raised distinct claims in Counts One and Two of his petition, and that only the second claim was addressed in *DuPerry I.*  In his first claim, DuPerry seeks relief on the ground that his plea of NGRI was not knowing, intelligent, or voluntary, and thus not constitutionally valid, because it was entered without full knowledge of its consequences. DuPerry argues that by pleading NGRI he waived the same fundamental trial rights that are waived when a defendant pleads guilty and therefore, because he did not plead NGRI knowingly, intelligently, or voluntarily, it was not a valid plea.   In his second claim, DuPerry seeks relief on the ground that the trial court did not canvass him to ensure that his NGRI plea was knowing, voluntary and intelligent.  The State counters that DuPerry's claims in Counts One and Two are actually the same – that his NGRI plea was not knowing, voluntary and intelligent *because* the trial court failed to properly canvass him.  The state contests what it calls the single claim on the grounds that it represents a new constitutional rule of criminal procedure, that *Teague* bars its application in collateral proceedings, and that the deferential standard of review that applies to habeas claims decided by state courts bars relief.

For the reasons set forth below, I find that DuPerry raised distinct claims in his first two counts and that the Connecticut Supreme Court did not decide the issue raised in Count One. Under the resultant *de novo* standard of review, DuPerry successfully challenges the constitutionality of his NGRI plea as violative of established Supreme Court precedent requiring that pleas waiving fundamental constitutional rights and imposing the consequence of confinement must be knowing, voluntary and intelligent.

A.    The Nature of DuPerry's First Two Claims for Relief

The respondents' opposition to the first two claims in the petition is based on the express conflation of those claims. "Although pleaded in Counts One and Two of the Petition; [sic] the allegations actually state only one claim – that the petitioner's *not* guilty plea was not knowingly and voluntarily entered because the trial court did not conduct an inquiry which would have provided him with the information necessary to the entry of a knowing and voluntary plea." Resp't's Suppl. Memo. of Law at 1 n.1 (Mar. 20, 2008) (emphasis in original). *See also* Resp't's Memo. of Law at 14 ("Essentially, he argues that the procedure followed in his case required the trial court to conduct an inquiry into the knowing and voluntary nature of his plea of *not guilty*.") (emphasis in original), 24-36 (discussing canvass requirement) (Mar. 1, 2007). In short, the respondents address only the claim in Count Two: that the trial court should have canvassed DuPerry to ensure that his waiver of constitutional rights was knowing, voluntary and intelligent. Except by dismissively characterizing DuPerry's arguments as based on his subjective beliefs, the respondents do not address the claim set forth in Count One that DuPerry's confinement is unconstitutional because his NGRI plea was not knowing and voluntary.

The strategic value of characterizing both Counts One and Two as raising a claim based

on the failure of the trial court to canvass DuPerry is obvious. The canvass claim is subject to strong arguments that it is barred by *Teague*. Indeed, the Connecticut Supreme Court expressly held that it was, thus subjecting any challenge to that holding in a federal habeas court to the deferential standard of review that the Connecticut Supreme Court's decision was contrary to clearly established federal law as determined by the United States Supreme Court. Those disadvantages do not attach to a claim that DuPerry's plea was not knowing, voluntary and intelligent, because such a claim raises no new *rule* of law that would bring it under *Teague*, and the Connecticut Supreme Court expressly declined to decide that issue. "[W]e do not address whether the substance of the habeas court's holding was proper, i.e., whether the principle of *Boykin v. Alabama*, that due process requires a plea of guilty to be knowing and voluntary, applies equally to a plea of not guilty by reason of mental disease or defect." *DuPerry I*, 261 Conn. at 326 n.7 (internal citations omitted).

The problem with respondents' argument is that, although the first two counts of DuPerry's petition begin with the same fundamental proposition, they then diverge into separate claims. In paragraph 69 of the first count, DuPerry alleges that a "non-adversarial NGRI disposition must be knowing and voluntary because it entails waiver of the defendant's constitutional privilege against self-incrimination and rights to contest the states' proof, to confront accusers, and to be tried by a jury. As with a plea of guilty, a defendant must fully understand the custodial consequences of his assent to a non-adversarial NGRI disposition in order for it to be valid." The allegations of paragraph 73 of the second count are nearly identical. Despite sharing the same constitutional underpinning, the two counts raise different claims for relief. In Count One, DuPerry's substantive claim is that his confinement violates the

Constitution because he "did not fully understand the custodial consequences of his decision to proceed with a pre-arranged disposition of not guilty by reason of mental disease or defect." Petition at ¶ 70. In Count Two, by contrast, DuPerry's substantive claim is that his confinement violates the Constitution because the "trial court failed to conduct a canvass of Mr. DuPerry analogous to that required for acceptance of a plea of guilty." *Id.* at ¶ 74.

The canvass rule helps ensure that a plea is knowing, voluntary and intelligent, but the requirement that plea be knowing, voluntary and intelligent represents an independent constitutional imperative, regardless whether the specific canvass *rule* is required.[7] The Connecticut Supreme Court's conclusion that the trial judge would not have felt constitutionally compelled to *canvass* DuPerry on his NGRI plea does not affect DuPerry's claim that, where a plea acts to waive fundamental constitutional rights and subjects the defendant to the possibility of confinement, that plea must be made knowingly, intelligently, and voluntarily. It is that claim, set forth in Count One, that I discuss below.

    1.    *Standard of Review*

        a.    State Court Conclusions of Law

Because the Connecticut Supreme Court did not reach the merits of the claim in Count One, *DuPerry I*, 261 Conn. at 318, the *de novo* standard of review applies. 28 U.S.C. § 2254(d); *Torres*, 340 F.3d at 68. The State conceded this point at oral argument. Tr. Apr. 25, 2007 at 5-6. Indeed, the Connecticut Supreme Court explicitly considered only whether a trial court was

---

[7] Obviously, a waiver of constitutional rights can be accomplished without a canvass, for example, through a written plea agreement. A canvass does not necessarily affect whether such a waiver is knowing, voluntary and intelligent, but it does provide a record from which courts may evaluate whether the waiver met that constitutional standard.

required to conduct an on-the-record canvass to ensure a defendant's NGRI plea was knowing, voluntary, and intelligent. *DuPerry I*, 261 Conn. at 312, 317-26. It specifically declined to consider whether the substance of the first habeas court's holding was proper, i.e., whether the constitutional principle "that due process requires a plea of guilty to be knowing and voluntary, applies equally to a plea of not guilty by reason of mental disease or defect." *Id.* at 326 n.7 (citing *Boykin*, 395 U.S. at 242-44). Therefore, I will consider DuPerry's legal arguments concerning Count One *de novo*.

b.      State Court Findings of Fact

Factually, however, I am bound to presume the correctness of the state courts' findings. The only court to consider whether DuPerry made his NGRI plea knowingly, voluntarily, and intelligently was the first habeas court, Spallone, J., presiding. The Connecticut Supreme Court never reached that issue on the merits, reversing the first habeas court's decision on an alternative ground, which leaves Judge Spallone as the sole state fact-finder to consider the issue whether DuPerry's NGRI plea was made knowingly and voluntarily. In his Memorandum of Decision Judge Spallone specifically stated:

> Under the circumstances presented by the record in this case, this court finds that the petitioner did not knowingly and voluntarily waive his constitutional right to a jury trial; nor did he understand the consequences of his plea of not guilty by reason of mental disease or defect.

A256 (internal citations omitted). Therefore, based on the deference owed the state court's factual findings under section 2254(e), I must accept the facts that DuPerry's NGRI plea was not made knowingly or voluntarily and that DuPerry did not understand the consequences of his plea.

B.    Is an NGRI Plea Invalidated When It is Entered Into Without an Understanding of the Consequences?

The primary issue raised by Count One is whether DuPerry's failure to enter a knowing and voluntary plea and to understand the consequences of pleading NGRI in the pre-arranged proceeding renders his plea constitutionally invalid.  Specifically, I must decide whether a plea of NGRI that is not knowing or voluntary, and is made without an understanding of its consequences, results in a violation of a defendant's constitutional right to due process, thus rendering that plea void.

1.    *Guilty Pleas Must Be Made Knowingly, Intelligently, and Voluntarily*

It is axiomatic that a defendant pleading guilty must do so knowingly, intelligently, and voluntarily in order to pass constitutional muster.  That is because, by pleading guilty, a defendant accepts significant consequences and waives several important constitutional rights – namely, the right against self-incrimination, the right to confront one's accusers, and the right to a trial by jury.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  As the Supreme Court explained in *Boykin*, a guilty plea is more than a merely a confession – a defendant is not only admitting that he or she committed the acts charged, but also is waiving constitutional trial rights and accepting the possibility of involuntary confinement.  *Id.* at 242 ("[I]t is itself a conviction; nothing remains but to give judgment and determine punishment.").  Therefore, given the potential for deprivation of liberty, it is well-established that a guilty plea that is not made knowingly and voluntarily is a violation of constitutional due process and is void.  *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  "For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'"

*Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." *Boykin*, 395 U.S. at 242-43. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with *sufficient awareness of the relevant circumstances and likely consequences*." *Brady v. United States*, 397 U.S. 742, 748 (1970) (emphasis added).

The principle that a guilty plea must be made knowingly and voluntarily was well-established by the time the Court decided *Boykin*. *See id.* at 747; *see also Kercheval v. United States*, 274 U.S. 220, 223-24 (1927) ("[A] plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. . . . [T]he court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence."). *Boykin* merely reiterated the long-held constitutional principle that guilty pleas must be made knowingly, intelligently, and voluntarily, while also mandating a new rule of constitutional criminal procedure that a trial judge must canvass a defendant to ensure the plea is made knowingly, intelligently, and voluntarily. *Id.* at 747 n.4 ("The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.").[8] As stated consistently in *Brady*, *McCarthy*, and *Boykin*, it is fundamentally important that "a defendant does not plead

---

[8] It is on the basis of this distinction between constitutional principle (guilty pleas must be knowing and voluntary) and constitutional rule (trial judges must canvass defendants to ensure guilty pleas are made knowingly and voluntarily) that DuPerry credibly asserts two related but separate grounds for relief concerning his NGRI plea in his petition for habeas corpus.

guilty except with a full understanding of the charges against him and possible consequences of his plea." *Brady*, 397 U.S. at 748 n.6.

The Supreme Court has long recognized that a defendant can waive constitutional trial rights through a plea other than a guilty plea. *See Brookhart v. Janis*, 384 U.S. 1, 7 (1966). In *Brookhart*, the record of the petitioner's trial revealed that he did not knowingly and intelligently agree to a non-adversarial prima facie bench trial, which the Court deemed "was the equivalent of a guilty plea and in which he would not have the right to be confronted with and cross-examine the witnesses against him." *Id.* at 7. Therefore, even though the petitioner did not technically plead *guilty*, but instead agreed to a proceeding that was "the practical equivalent of a plea of guilty," the Court invalidated the proceeding, which operated as a waiver of the petitioner's fundamental constitutional rights to confront his accusers and to cross-examine witnesses, because the waiver was not made knowingly and voluntarily. *Id.*

        2.     *Contemporary Authority Recognizing Fundamental Similarities Between Guilty Pleas and NGRI Pleas*

In May 1988, before DuPerry's NGRI plea, the Second Circuit concluded that the due process considerations that compelled the state to turn over exculpatory evidence upon request were equally applicable where the defendant pleads NGRI, and voided the petitioner's NGRI plea where the state had withheld such information before trial. *Miller v. Angliker*, 848 F.2d 1312, 1320, 1324 (2d Cir. 1988). The petitioner, Benjamin Miller, had been committed to the custody of the Commissioner of Mental Health of the State of Connecticut in 1973 after pleading not guilty by reason of insanity to the murders of several young women during a non-adversarial bench trial. *Id.* at 1314. Miller brought a petition for habeas corpus on the ground that the state

withheld evidence connecting another suspect to the murders before he agreed to plead NGRI, thus violating his due process right to be provided with all exculpatory evidence upon request. *Id.* at 1313-14. After he was arraigned, the state's attorney in charge of prosecuting the case informed Miller's defense counsel that the state's psychiatrist believed Miller could be found NGRI. *Id.* at 1315. Miller's defense counsel brokered a plea agreement with the state's attorney whereby the state would drop two charges against Miller in return for his decision to enter an insanity defense. *Id.* at 1317. At the one-day trial held before a three-judge panel in Connecticut Superior Court, the state presented its prima facie case and Miller presented his insanity defense – testimony from two psychiatrists on his mental condition. *Id.* After both sides urged the court to accept Miller's insanity defense, the three-judge panel found him not guilty by reason of insanity. *Id.* Miller was later committed to the custody of the mental health commissioner for a term of confinement not to exceed 25 years. *Id.*

After exhausting his state court habeas remedies, Miller filed a petition pursuant to section 2254 in the District of Connecticut, arguing that the state violated his due process right to exculpatory evidence, as established by *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to turn over the evidence of the other suspect in the case. *Miller*, 848 F.2d at 1317. The district court denied his petition on the ground that Miller failed to prove the materiality of the exculpatory evidence. *Id.* at 1318. The Second Circuit reversed, holding that a defendant who pleads NGRI is entitled to the same due process right to demand exculpatory evidence from the state as a defendant who pleads guilty. *Id.* at 1320. Determining that the evidence would have been material to Miller's decision to plead NGRI under *Brady v. Maryland*, the court remanded the case with a direction to conditionally grant the writ, and to grant it permanently if the state

chose not to bring Miller to trial within a reasonable time.  *Id.* at 1324.

The Second Circuit's reasoning relied heavily on its assessment that, for all practical purposes, the decision to plead NGRI in a non-adversarial proceeding subjected a defendant to the same consequences as a guilty plea and thus should be accorded the same consideration of due process.  *Id.* at 1319-20.

> A plea of not guilty by reason of insanity resembles the plea of guilty in several significant respects, as it waives important trial rights belonging to the defendant, including his right to argue that he did not perform the acts with which he is charged, his right to urge through cross-examination of the State's witnesses that his confessions were not voluntary, and his right to introduce any other evidence tending to create a doubt that he actually performed the acts charged.

*Id.* at 1319.  The court acknowledged there were differences between the two pleas, namely that where a defendant pleads NGRI, the state is still required to present a prima facie case sufficient to convince the trier of fact that the defendant committed the alleged acts beyond a reasonable doubt.  *Id.*  Nevertheless, the court concluded that a NGRI plea is more like a "guilty" plea than a "not guilty" plea because it lessens the state's burden "as a practical matter by barring the defendant from contesting or impeaching the State's proof and from presenting other evidence that could counter that proof."  *Id.* at 1319-20.  The court next noted that the validity of a guilty plea rises and falls with the determination whether it was made intelligently and voluntarily.  *Id.* at 1320.  It stated that the decision to plead guilty is "often heavily influenced by [the defendant's] appraisal of the prosecution's case, and of information that may be available to cast doubt on the fact or degree of his culpability," so that a lack of knowledge about exculpatory evidence rendered a guilty plea "vulnerable to challenge."  *Id.* (internal citations omitted).  Therefore, it held that, "[g]iven the practical similarities" between the two types of pleas, the

principles of *Brady v. Maryland* were equally applicable where the defendant pleads NGRI. *Id.*

The D.C. Circuit made a similar comparison between guilty pleas and cases where the defendant stipulates to every issue except sanity in *United States v. Brown*, 428 F.2d 1100, 1103-04 (D.C. Cir. 1970). In that case, the defendant agreed to stipulate that he committed all the acts charged in the indictment, leaving the issue of his mental condition for the court, thereby establishing the government's prima facie case and shifting the burden to him to prove his insanity defense. *Id.* at 1103. The petitioner sought habeas relief on the ground that the court failed to canvass him on whether he was making the decision knowingly, intelligently, voluntarily. *Id.* at 1101-02. The D.C. Circuit concluded that a trial judge was required to canvass the defendant "to determine whether the defendant's waiver of trial by jury on acts charged in the indictment was voluntary and with an understanding of its consequences." *Id.* at 1103. In reaching this decision, significantly for purposes of the instant petition, the court held that the petitioner had essentially pled guilty in all practical respects. *Id.* at 1102-03 ("But for the reservation of the mental issue this was a plea of guilty."). Though the court took the step of requiring trial courts to perform a canvass, the same rule of criminal procedure that the Connecticut Supreme Court declined to apply retroactively in DuPerry's case, *Brown* is nonetheless persuasive on the issue whether the constitutional principle that a guilty plea must be made knowingly and voluntarily applies equally to NGRI pleas. *Id.* at 1103-04.

3.     *DuPerry's NGRI Plea Was Not Made Knowingly or Intelligently*

Relying on the first habeas court's factual finding that DuPerry did not enter a knowing and voluntary plea and did not understand the consequences of his plea, I conclude that his NGRI plea was constitutionally invalid. DuPerry's NGRI plea was the practical equivalent of a guilty

plea because it operated as a waiver of his constitutional trial rights – including the right to a trial by jury and to confront his accusers – and subjected him to the possibility of involuntary and indefinite confinement. Although he did not completely relieve the state of its burden of proof, like the petitioner in *Miller*, he lessened that burden considerably. DuPerry's trial was a non-adversarial prima facie bench trial, which lasted under two hours and was focused primarily on establishing his mental state. His defense counsel essentially declined to cross-examine the state's witnesses and did not meaningfully contest any of the factual charges against him. At the urging of both the state and his defense counsel, the court accepted his plea of NGRI and remanded him to the custody of the PSRB for a term not to exceed twenty-five years.

DuPerry was unaware that pleading NGRI opened him to the possibility of involuntary confinement for up to the maximum term of the act charged – twenty-five years – or even indefinitely if the PSRB declined to recommend his release or a court declined to grant any such recommendation. The consequences DuPerry faced by pleading NGRI were as severe as pleading guilty, and as it turns out, have been more severe. If DuPerry had decided to plead guilty, as part of his plea bargain with the state he would have faced only a twelve-year period of confinement, yet his NGRI plea has subjected him to confinement for the past twenty years.

Because NGRI pleas impose the consequence of involuntary confinement and operate as waivers of important constitutional trial rights in the same way that guilty pleas do, the long-standing constitutional principles that obligate guilty pleas to be made knowingly, intelligently, and voluntarily, attach with equal force to NGRI pleas. To be constitutionally valid, DuPerry must have pled NGRI knowingly and with a complete understanding of the potential consequences. Because he did not, his NGRI plea is invalid and his petition is granted with

respect to the issue raised in Count One.  Therefore, I need not reach his other grounds for relief raised by this petition, which are denied, without prejudice, as moot.

## IV.     Remedy for the Violation

The holding that DuPerry's NGRI plea was unconstitutional raises the question of the appropriate remedy.  Obviously, the NGRI plea must be vacated.  So, too, must the judgment of commitment, which was based on that plea.  Because the judgment of commitment provided the legal basis for DuPerry's confinement with the PSRB, there is presently no valid legal basis for that confinement and DuPerry must be released.   No future confinement can be justified on the vacated judgment of commitment.

In the typical successful habeas case, the petitioner has been convicted of a crime, but that conviction is tainted by constitutional defect.  Often the constitutional defect is curable, and the state may seek a retrial to correct the constitutional error.  Under such circumstances, habeas courts often impose conditional release orders, requiring the petitioner's release from custody unless a retrial is conducted within a set period of time.  *See, e.g., Leka v. Portuondo*, 257 F.3d 89, 107 (2d Cir. 2001).  Here, a conditional release is not appropriate because DuPerry neither pled guilty nor was found guilty following trial; instead, he was found not guilty, albeit by reason of insanity.  In addition, the habeas relief in this case comes after DuPerry has been confined for more than twenty years.  Because DuPerry's confinement has satisfied any reasonable retributive goal of sentencing, no criminal justice purpose justifies his continued confinement.  *See LaFrance v. Bohlinger*, 487 F.2d 506, 507 (1st Cir. 1973).

It is difficult to imagine that the state would want to prosecute DuPerry further after he has served nearly twice the time that the state was willing to offer in exchange for guilty pleas to

the underlying charges.  Still, that is a decision left to the discretion of state prosecutors in the first instance.  Any such continued prosecution shall be barred unless DuPerry is brought to trial within the next forty-five days.  Nothing in this ruling should be construed as suggesting whether any such prosecution is or is not barred by double jeopardy.

**V.**     **Conclusion**

For the foregoing reasons, DuPerry's petition for writ of habeas corpus (**Doc. # 1**) is GRANTED.  The judgment of commitment and DuPerry's NGRI plea are vacated.  DuPerry shall be released forthwith.  The state shall be barred from prosecuting DuPerry on the charges underlying this case unless he is brought to trial with the next forty-five days.  The clerk is directed to close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 3rd day of July 2008.

/s/ Stefan R. Underhill
      Stefan R. Underhill
      United States District Judge